# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## CASE NO.:  10-CV-80962-LSS

CARL STORK

               Plaintiff,

v.

LYDIAN TRUST COMPANY, a Florida
Corporation, RORY A. BROWN, an individual;
CLARK JOHNSON, an individual, JOHN
PURCELL, an individual; DANIEL STANTON,
an individual

               Defendants

_____/

## Defendants' Motion To Dismiss, And/Or For Summary Judgment Or, In The Alternative, Motion For A More Definite Statement, With Incorporated Memorandum Of Law

Defendants, LYDIAN TRUST COMPANY, a Florida corporation ("Lydian"), RORY A. BROWN ("Brown"), CLARK JOHNSON ("Johnson"), an individual, JOHN PURCELL ("Purcell"), an individual and DANIEL STANTON ("Stanton"), an individual (sometimes hereinafter collectively referred to as "Defendants"), pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), respectfully requests that this Court enter an Order dismissing Counts I, II and III of Plaintiff, Carl Stork's ("Stork") Complaint, and/or, pursuant to Federal Rules of Civil Procedure 12(d) and 56, for summary judgment, or in the alternative, pursuant to Federal Rule of Civil Procedure 12(e), require Plaintiff to provide more definite statements to Counts I, II and III (hereinafter, the "Motion").   Defendants state the following in support of their Motion.

## I.      <u>Introduction</u>

Lydian is a corporate entity involved in offering a full array of banking and management services to individuals and businesses, including banking and wealth management services.  At the relevant time periods, Brown was an officer and on the Board of Director of Lydian, and Johnson, Purcell and Stanton were also on the Board of Directors of Lydian.  (Complaint at ¶¶ 6-9)  At one point in time, Stork was a customer and also sat on the Board of Directors of Lydian. Stork remains a shareholder of Lydian.  (<u>Id</u>. at ¶4)  Stork is a sophisticated business man, and is a retired Microsoft executive.  (<u>Id</u>. at ¶13)   According to the Complaint, and accepting those allegations as true for purposes of this Motion, Stork owns 434,000 shares of Lydian stock. (<u>Id</u>. at ¶14)    The entire premise of Stork's Complaint revolves around an <u>unexecuted</u> contract dated April 23, 2007(attached to the Complaint)(hereinafter, the "Contract") wherein Stork claims Lydian agreed to purchase Stork's shares in Lydian at a purchase price of $17.50 per share on or around August 15, 2007.  (<u>See</u> Complaint and Exhibit 1 attached thereto at ¶3)  Pursuant to the allegations in the Complaint, Lydian did not purchase Stork's Lydian shares as provided for under the unexecuted Contract.  As a result, Stork filed his Complaint sounding in three counts: Count-1 (Breach of Contract Against Lydian and Brown), Count-II (Fraud Against Lydian and Brown) and Count-III (Breach of Fiduciary Duty Against Brown, Johnson, Purcell, and Stanton.

The Complaint should be dismissed because Plaintiff failed to attach a binding legal agreement in that Lydian is not a signatory to the attached Contract.  Additionally, the Complaint alleges several superfluous allegations which do not detail, with particularity, the fraud committed by Lydian and Brown or the breach of fiduciary duties allegedly owed by Brown, Johnson, Purcell, and Stanton, thereby requiring dismissal of those counts.  Moreover, assuming

the Contract is valid and executed as Plaintiff contends, the fraud and breach of fiduciary duty counts should be dismissed under Florida's economic loss rule in that breaching party's performance of the contract does not give rise to an independent cause of action in tort.  In short, Plaintiff's Complaint is really about the alleged failure to perform a contract, but is nonetheless riddled with irrelevant and unfounded allegations desperately seeking to allege claims for fraud and breach of fiduciary duties.   Therefore, for the reasons set forth herein, Plaintiff's complaint should be entirely dismissed.

## II. Standards Applicable To This Motion To Dismiss And Motion For Summary Judgment, Or Alternatively, Motion For More Definite Statement

### a.   Motion To Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if it fails to state a cause of action against the defendant.  A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In ruling on a motion to dismiss, this Court must view the complaint in the light most favorable to the non-moving party.  See Hunnings v. Texaco, Inc., 29 F.3d 1480, 1483 (11th Cir. 1994).  A court must liberally construe the complaint's allegations in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombley, 127 S. Ct. 1955, 1964-65 (2007).  When reviewing a motion to dismiss, a plaintiff's "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

3

Thus, a court is not bound to accept as true "a legal conclusion couched as a factual allegation." *Id*. (*quoting* <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).  The standard "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." <u>Watts v. Fla. Int'l Univ.</u>, 495 F. 3d 1289, 1295-96 (11th Cir. 2007).

When reviewing motions to dismiss, because Rule 12 "permits a party to make by motion certain enumerated defenses –in law or fact,' the court may consider matters outside the pleadings, particularly when the motion is predicated upon key issues of fact." <u>Webster v. Royal Caribbean Cruises, Ltd.</u>, 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000).  Moreover, "when a party moves for dismissal for failure to state a claim under Rule 12(b)(6), the rule specifically provides that if the court considers matters outside the pleadings, the court is required to convert the motion to one for summary judgment under Rule 56 and serve notice upon the parties so that they may present all materials made pertinent to such motion." *Id*.

Next, Rule 9(b), Fed. R. Civ. P., requires that all averments of fraud and the circumstances constituting fraud must be stated with particularity.  Fed. R. Civ. P. 9(b).  "Rule 9(b) may be satisfied if the complaint includes: (1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement [or omission] and the person responsible for . . .  same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants "obtained as a consequence of the fraud." <u>Brooks v. Blue Cross & Blue Shield</u>, 116 F. 3d 1364, 1371 (11th Cir. 1997); <u>see</u> <u>also</u> <u>Reina v. Gingerale Corp.</u>, 472 So. 2d 530, 531 (Fla. 3d DCA 1985) ("It has long been the Florida rule that whenever fraud is relied upon, allegations relating thereto must be specific, and facts constituting fraud must be clearly stated.").

Under Rule 9(b) a complaint must "provide notice of the precise misconduct with which defendants are charged in order to give them an opportunity to respond meaningfully to a complaint, and to prevent false or unsubstantiated charges." Flamenbaum v. Orient Lines, Inc., Case No. 03-22549, 2004 WL 1773207, at *6 (S.D. Fla. July 20, 2004).   The court in Flamenbaum stated:

> [Rule 9(b)] will be satisfied if the complaint sets forth what statements or omissions were made in what documents or oral representations; the time and place of the statements or omissions; who made the statements; the content of the statement and the manner in which they [sic] misled the plaintiffs; and what the defendant obtained as a consequence of the fraud." Drushkin v. Answerthink, Inc., 299 F.Supp. 2d 1307, 1321 (S.D. Fla. 2004) (citations omitted).   [S]ee Cooper v. Blue Cross and Blue Shield of Florida, 19 F.3d 562, 568 (11th Cir. 1994) ("The plaintiff's complaint must allege the details of the defendants [sic] allegedly fraudulent acts, when they occurred, and who engaged in them," including how many statements were fraudulent).

See also In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (requiring a plaintiff to plead "the who, what, where, when, why, and how:  the first paragraph of any newspaper story").   Consequently, "averments in pleas of mere opinions and promises and of indefinite matters are not sufficient to show fraud." Hufstetler v. Our Home Life Ins. Co., 65 So. 1, 7 (Fla. 1914) (sustaining dismissal of fraud allegation as insufficient).

**b.  <u>Request To Convert Motion To Dismiss To Motion For Summary Judgment</u>**

When reviewing motions to dismiss, because Rule 12 "permits a party to make by motion certain enumerated defenses in law or fact," the court may consider matters outside the pleadings, particularly when the motion is predicated upon key issues of fact." Webster v. Royal Caribbean Cruises, Ltd., 124 F. Supp. 2d 1317, 1320 (S.D. Fla. 2000).  Moreover, "when a party moves for dismissal for failure to state a claim under Rule 12(b)(6), the rule specifically provides that if the court considers matters outside the pleadings, the court is required to convert the

motion to one for summary judgment under Rule 56 and serve notice upon the parties so that they may present all materials made pertinent to such motion." Id. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure may only be entered where there is no genuine issue of material fact. Moreover, Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The non-movant is required to "go beyond the pleadings and by [its] own affidavits or by the depositions, answers to interrogatories, and admissions on file designate –specific facts showing that there is a genuine issue for trial." Id. at 324. In other words, the non-movant may not rest merely upon allegations contained in the pleadings. Certain Underwriters at Lloyd's v. Capri of Palm Beach, Inc., 932 F. Supp. 1444, 1446 (S.D. Fla. 1996). The Eleventh Circuit has stated "[i]f the non-moving party fails to –make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof,' then the court must enter summary judgment for the moving party." Gonzalez v. Lee County Hous. Auth., 161 F.3d 1290, 1294 (11th Cir. Fla. 1998). Thus, "[i]f the non-movant...fails to adduce evidence, which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted." Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1370 (11th Cir. 1997).

### c. Alternative Motion For More Definite Statement

Finally, Fed. R. Civ. P. 12(e) provides that: "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a

responsive pleading and must point out the defects complained of and the details desired. If the court orders a more definite statement and the order is not obeyed within 10 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order.

### III.  Motion To Dismiss

#### a.   Motion To Dismiss Count - I Of The Complaint For Breach Of Contract And Alternative Motion For Summary Judgment

Count – I of Plaintiff's Complaint is a claim for breach of contract.  This claim is fatally flawed because the undisputed facts show that there was no valid Contract between Stork and Lydian.  Lydian did not execute the Contract and, based upon Stork's own e-mails (see *infra*), the Contract was still under negotiation, the final terms had not been agreed upon by either party, there was no mutual assent and there was an absence of a meeting of the minds.

State law governs breach of contract claims.  Florida Automobile Joint Underwriting Association v. Milliman, Inc., 2007 WL 1341127 (N.D. Fla. 2007).  Courts have held that the existence of a valid contract is a threshold question of law for the trial court.  Acumen Constr., Inc. v. Neher, 616 So. 2d 98, 99 (Fla. 2d DCA 1993) (*citing* Caltagirone v. School Board of Hernando County, 355 So. 2d 873 (Fla. 2d DCA 1978)).  Thus, it is for the court in this case to determine whether or not a valid contract existed between Lydian and Stork.  We submit that it did not.

Next, where essential terms of an agreement remain open, subject to future negotiation, there can be no enforceable contract. Suggs v. Defranco's, Inc., 626 So. 2d 1100, 1100 (Fla. 1st DCA 1993); Theocles v. Lytras, 518 So. 2d 936 (Fla. 3d DCA 1988).  When parties continue to negotiate terms of a written contract and do not agree to all the terms thereof, there is no

7

õmeeting of the mindsö and, at best, there may only be an õagreement to agreeö which does not give rise to a contract that entitles a party to recover damages for breach.  DK Arena, Inc. v. EB Acquisitions I, LLC., 31 So.3d 313, 326-327 (Fla. 4th DCA 2010); see also Bergman v. DeIulio, 826 So.2d 500 (Fla. 4th DCA 2002).  To find otherwise õ. . . . would turn business negotiations into seas of peril from which contractual liability could later rise to bite a good faith negotiator.ö DK Arena, Inc. v. EB Acquisitions I, LLC., 31 So.3d at 327.

    In the instant case, Lydian and Stork were negotiating the potential purchase of Storkøs shares in Lydian.  In an effort to aid the court and pursuant to Rule 12(b)(6), the e-mails listed below must be considered.   Sometime before April 30, 2007, Lydian sent Stork the draft Contract attached to Storkøs complaint as Exhibit õ1ö.   On April 27, 2007 at 9:40 a.m., Stork sent an e-mail to Lydian (**Exhibit "A"**) stating that he had õseveral questionsö related to the Contract for the sale of his shares in Lydian, that he questioned the August 2007 date for the purchase/sale of his shares in Lydian and, that due to his inability to locate his share certificates, he requested additional provisions dealing with an affidavit of loss or õother processö addressing same.   See **Exhibit "A"**.  Then, on April 30, 2007 at 10:43 a.m., Lydian responded to Storkøs e-mail and informed him that õ. . . the Lydian Trust Company Board had **not** finally approved the stock purchase plan. . . , that õ. . . a number of shareholders ha[d] indicated an interest in selling their shares. . .ö and that õbecause the total number of shares to be repurchased. . ., the OTS [the Office of Thrift Supervision - hereinafter õOTSö] needs to approve the transaction as well.ö  See Exhibit õAö.   Accordingly, it was clear from the e-mail exchange that negotiations were still underway and that no deal would be finalized unless and until the Lydian Board and the OTS approved the repurchase transaction.   Nonetheless, after receiving the above e-mail on April 30,

8

2007 and knowing full well that the Contract was simply under negotiation and several conditions precedent needed to occur (e.g.., approval by the Lydian Board and the OTS) before a final Contract could be executed, Stork swiftly signed the contract and returned same of even date in a specious yet failed attempt to bind Lydian.  See Exhibit õ1ö to the Complaint.

It is clear from Storkøs e-mail that he questioned material parts of the Contract including, but not limited to, the date the alleged transaction was to close and requested that additional provisions be incorporated.  Stork also knew the Lydian Trust Company Board had not finally approved the stock purchase plan and the OTS needed to approve the repurchase transaction before Lydian and Stork could make a valid and final Contract.  See Theocles v. Lytras, 518 So.2d at 938 (contract held unenforceable where parties failed to agree on all material and essential terms, *including closing date* and handling of certain business liabilities); Northland Capital Corp. v. Silver, 735 F.2d 1421 (D.C.Cir.1984) (contract to purchase securities unenforceable where no agreement on terms was reached and parties contemplated that closing was necessary to consummate transaction); Restatement (Second) of Contracts § 33 comment a. (1981).  Thus, there was not a sufficient meeting of the minds between Stork and Lydian to establish an enforceable agreement because essential terms were still under negotiation (including a closing date) and the OTS and the Lydian Board having to approve the transaction before a final contract could be made and executed.  DK Arena, Inc. v. EB Acquisitions I, LLC., 31 So.3d at 326-327.  In Bullock v. Harwick, 158 Fla. 834, 838 (Fla. 1947), the court found that:

> []acceptance is the means by which the minds of two parties are brought to an agreement, it must be so expressed as to show that there is an actual assent, a meeting of the two minds *and that there is an assent upon exactly the same matters*. To produce a concluded contract the acceptance must, therefore, possess certain fundamental requisites.  First, it must be absolute, unambiguous, unequivocal, without condition or reservation. * * * *Second, as the assent of the*

9

> *parties should be given to exactly the same matters, the acceptance must not vary from the terms of the offer, either by way of omission, addition, or alteration; if it does vary in either of these modes, no contract is concluded thereby, the transaction remains in the state of negotiation, and  neither party is bound.*

Similar to <u>Bullock</u>, Lydian and Stork did not have a meeting of the minds and did not have assent upon exactly the same matters in the Contract.  The fact that Stork sent the e-mail questioning the closing date, requesting additional provisions in the Contract regarding his lost stock certificates and the significant fact that Lydian advised him that the sale must first be approved by the Board of Lydian and the OTS further evidences there was no acceptance of the Contract, that there was not a meeting of the minds, that no contract had been formed and that the transaction remained in a state of negotiations.  <u>Id</u>.  Accordingly, neither party is bound to the Contract attached to the Complaint as there was not, among other things, mutual assent.  <u>Florida Automobile Joint Underwriting Association v. Milliman, Inc</u>., 2007 WL 1341127 ("To state a cause of action for breach of contract, a plaintiff is required to allege facts that, if taken as true, demonstrate that the parties mutually assented to a ̳certain and definite proposition' and left no essential terms open."), *quoting*, <u>W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc</u>., 728 so.2d 297 (Fla. 1ˢᵗ DCA 1999).

In addition, the e-mail sent by Stork constitutes a rejection and thus a counteroffer because it does not mirror the original offer.  <u>Finnan v. Bob Lindsay, Inc</u>., 852 NE 2d 446 (Ill. 3d DCA 2006)(acceptance requiring modification constituted counteroffer).   Florida follows the "mirror image rule" with respect to contracts.  <u>Montgomery v. English</u>, 902 So.2d 836, 837. "Under this rule, in order for a contract to be formed, an acceptance of an offer must be absolute, unconditional and identical with the terms of the offer." <u>Id.</u>; <u>see</u> <u>also</u>  <u>Sullivan v. Econ. Research</u>

Properties, 455 So.2d 630 (Fla. 5th DCA 1984); Holloway v. Gutman, 707 So.2d 356 (Fla. 5th DCA 1998)(holding that acceptance must be of the identical terms of the offer).

Next, it is well settled under Florida law that, under these circumstances, õwhere parties intend that their verbal negotiations shall be reduced to writing as the evidence of the terms of their agreement, there is nothing binding on them until the writing is executed.ö  Rork v. Las Olas Co., 156 Fla. 510, 23 So. 2d 839, 842 (Fla. 1945), *citing,* Ocala Cooperage Co. v. Florida Cooperage Co., 59 Fla. 390, 52 So. 13, 16 (Fla. 1910).

Directly on point, the Supreme Court of Florida, in Rork v. Las Olas Co., 156 Fla. 510, 23 So. 2d 839, 843 (Fla. 1945), held:

> It is plain to us that these parties intended that negotiations be absorbed in the so-called contract forming the basis of the suití  We further have the view that the purported contract on which this bill of complaint was founded was in fact no contract at all because the instrument had not been signedí    If it [the written draft] is viewed as the consummation of the negotiation, there is no contract until the written contract is finally signed.  [citations and internal quotations omitted]

Rork v. Las Olas Co., 156 Fla. 510, 23 So. 2d 839, 843 (Fla. 1945).

Accordingly, there is no question that the parties intended to reduce their verbal negotiations to a written agreement.  As such, there can be nothing binding upon them until such time as the writing is ultimately executed by the parties, which, in this case, never occurred as Lydian did not execute same.  See Exhibit õ1ö to the Complaint and Rork v. Las Olas Co., 23 So. 2d at 842 (õ[i]f it is viewed as the consummation of the negotiation, there is no contract until the written contract is finally signedö).

Wherefore, Defendant, Lydian, hereby requests that Count-I of the Complaint be dismissed or that this portion of the Motion to Dismiss be converted to a Motion for Summary

Judgment and judgment entered thereon in favor of Lydian as there is no genuine issue of material fact showing that a valid contract existed and for such other and further relief as this court deems just and proper.

**b.      Motion To Dismiss Count - II Of The Complaint For Fraud**

**(i)   Plaintiff's Fraud Count Fails To Plead Facts With Sufficient Particularity As Required By Rule 9(b) Of The Federal Rules Of Civil Procedure**

Plaintiff's fraud claim should be dismissed for failure to allege fraud in accordance with the requirements set forth in Rule 9(b), Fed. R. Civ. P.  Rule 9(b) requires that all averments of fraud and the circumstances constituting fraud must be stated with particularity.  Fed. R. Civ. P. 9(b).  "Rule 9(b) may be satisfied if the complaint includes: (1) precisely what statements were made in what documents or oral representations or what omissions were made; (2) the time and place of each such statement [or omission] and the person responsible for . . .  same; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant "obtained as a consequence of the fraud."  Brooks v. Blue Cross & Blue Shield, 116 F. 3d 1364, 1371 (11th Cir. 1997); see also Reina v. Gingerale Corp., 472 So. 2d 530, 531 (Fla. 3d DCA 1985) ("It has long been the Florida rule that whenever fraud is relied upon, allegations relating thereto must be specific, and facts constituting fraud must be clearly stated.").

The purpose of the pleading requirement under Rule 9(b) is that the complaint "provides notice of the precise misconduct with which defendants are charged in order to give them an opportunity to respond meaningfully to a complaint, and to prevent false or unsubstantiated charges."  Flamenbaum v. Orient Lines, Inc., Case No. 03-22549, 2004 WL 1773207, at *6 (S.D. Fla. July 20, 2004).  The court in Flamenbaum stated:

> [Rule 9(b)] will be satisfied if the complaint sets forth what statements or
> omissions were made in what documents or oral representations; the time and
> place of the statements or omissions; who made the statements; the content of the
> statement and the manner in which they [sic] misled the plaintiffs; and what the
> defendant ÷obtained as a consequence of the fraud.ö  Drushkin v. Answerthink,
> Inc., 299 F.Supp. 2d 1307, 1321 (S.D. Fla. 2004) (citations omitted).  [S]ee
> Cooper v. Blue Cross and Blue Shield of Florida, 19 F.3d 562, 568 (11th Cir.
> 1994) (õThe plaintifføs complaint must allege the details of the defendants [sic]
> allegedly fraudulent acts, when they occurred, and who engaged in them,ö
> including how many statements were fraudulent).

See also In re Advanta Corp.  Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999) (requiring a plaintiff to plead õthe who, what, where, when, why, and how:  the first paragraph of any newspaper storyö).  Consequently, õaverments in pleas of mere opinions and promises and of indefinite matters are not sufficient to show fraud.ö  Hufstettler v. Our Home Life Ins. Co., 65 So. 1, 7 (Fla. 1914) (sustaining dismissal of fraud allegation as insufficient).

The when, where, why, and how, relative to the allegations of fraud in the Complaint are simply not explained by Stork.  The vague, conclusion-based allegations in Plaintifføs Complaint do not allege the required elements of fraud with sufficient particularity as required under Florida law.  First, Plaintifføs Complaint fails to identify any place that Defendants made statements that were fraudulent or who made them.  Second, the Complaint **does not** allege with any particularity when the purported misrepresentations were made or provide further context, and merely states that õDefendants (without specifying which Defendants), had no intention of completing the purchase of Storkøs shares.ö (Complaint at ¶18)  õInstead, they merely wished to obtain Storkøs silence until it was too late for him to prevent the sale. . . .ö (Complaint at ¶18)  While Stork alleges that õBrown represented and agreed that Lydian would repurchase Storkøs shares for 17.50. . . ö (Complaint at ¶17) in an effort to trick him into not objecting to sale of

Lydian's wealth management division (Complaint at ¶16-17), Stork still fails to plead when, where, and how the alleged allegation of fraud was made.

Finally, none of these allegations are linked to specific actions taken, the "why" the "when," the "where" and the "how" but rather Plaintiff merely alleges "Stork's silence was Defendants' goal," ". . . Defendant Brown caused Lydian to repudiate its agreement to purchase Stork's stock," and that "Stork reasonably relied upon this promise, to his detriment." (Complaint at ¶38 & 52).  Defendants are not on notice as to what, when why and how Lydian, Brown and other Defendants made these alleged false statements, whether other Defendants made statements (as the allegations in the complaint generally refer to "Defendants" – see *supra*) and when and how these alleged statements were made to Stork.  Moreover, there are no allegations whatsoever as to when, why and how Brown or the remaining Defendants caused Lydian to "repudiate" the Contract.  (Complaint at ¶38).  Further, the Complaint does not set forth what statements or omissions were made in what documents or oral representations and, again, the time and place of the statements or omissions leading up to the alleged fraud or repudiation of the alleged agreement. The Plaintiff's complaint must allege the details of the Defendants alleged fraudulent acts, when they occurred, and who engaged in them, including how many statements were fraudulent, which ones were fraudulent and what was fraudulent about the alleged repudiation.  Flamenbaum v. Orient Lines, Inc., Case No. 03-22549 at *6, Drushkin v. Answerthink, Inc., 299 F.Supp. 2d at 1321; Cooper v. Blue Cross and Blue Shield of Florida, 19 F.3d at 568 and  In re Advanta Corp.  Sec. Litig., 180 F.3d at 534.  Without clarifying same, Defendants cannot reasonably respond to the fraud count.

Consequently, "averments in pleas of mere opinions and promises and of indefinite matters are not sufficient to show fraud." Hufstettler v. Our Home Life Ins. Co., 65 So. 1, 7 (Fla. 1914) (sustaining dismissal of fraud allegation as insufficient).  The alleged misrepresentations "directly affecting the transactions should be clearly and distinctly stated showing the specific representations made and relied on, the falsity of the representations, and the resulting injury to the complaining party." Id. The vague, conclusion-based allegations in Stork's Complaint do not state the elements of fraud with sufficient specificity, as required under Florida law. As the allegations of Plaintiff's claims for fraud fail to meet the strict pleading requirements of Fed. R. Civ. P. 9, this Court should dismiss same.

Wherefore, Defendant, Lydian and Brown, hereby request that Count-II of the Complaint be dismissed, and for such other and further relief as this court deems just and proper.

### (ii) Count – II Should Also Be Dismissed Because The Economic Loss Rule Bars Plaintiff's Claim For Fraud

Assuming this Court finds a valid Contract, Florida's economic loss rule demands that Plaintiff's claim for fraud be dismissed because Lydian and Brown did not owe any duty to Plaintiff independent of those contained within the Contract and the contract claim and the fraud claim both seek the same damages and arise from the same conduct or occurrences.  From the outset, this Court should note that the Contract was to be signed by Brown, on behalf of Lydian, and by Stork.  Stork signed the Contract; however, Brown and Lydian did not.  The fraud count is against Lydian and Brown.

The economic loss rule of Florida prevents a party from seeking damages for "inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits – without any claim of personal injury or damage to other property." Casa Clara Condo. Ass'n v.

Charley Toppino & Sons, 620 So. 2d 1244, 1246 (Fla. 1993).   The purpose of Florida's economic loss rule is to force parties to protect against the risk of loss through contractual negotiations as opposed to seeking the recovery of later damages in tort.   See Pulte Home Corp. v. Osmose Wood Preserving, Inc., 60 F.3d 734, 739 (11th Cir. 1996).   The Florida Supreme Court has noted that ". . . one party may not seek to obtain a better bargain than it made by turning a breach of contract into a tort for economic loss."   Indem. Ins. Co. of N. Am. v. Am. Aviation, Inc., 891 So. 2d 532, 542 (Fla. 2004).

Stork's claim for fraud, as alleged, attempts to recover economic losses incurred as a result of an alleged failure to perform a Contract, which, if you believe Plaintiff, was made during the course of a relationship governed by the agreement attached to the Complaint. "Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be *independent* from acts that breached the contract."   HTP Ltd. V. Lineas Aeraes Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1996). (emphasis added).   The misrepresentations or fraud relating to the breaching party's performance of the Contract, regardless of whether negligent or intentional, do not give rise to an independent cause of action in tort.   See id. at 1240; see also Greenfield v. Manor Care, Inc., 705 So. 2d 926, 932 (Fla. 4th DCA 1997).   To be an independent cause of action, the representations complained of must relate to matters extraneous to the parties' contract.   Consequently, the Plaintiff is bound by the allocation of loss he bargained for (i.e., breach of contract damages).

In addition, all purported losses were incurred pursuant to the Contract's terms; the Plaintiff's Complaint does not allege any differently, and as a result, there can be no recovery for alleged "fraud" in allegedly failing to perform the contract.   The allegations, as stated, make

Plaintiff's claim of fraud barred by Florida's economic loss rule because alleged "misrepresentations relating to the breaching party's performance of a contract do not give rise to an independent cause of action." Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So. 2d 74, 78 (Fla. 3d. DCA 1997) (affirming dismissal of fraud claim).  The economic loss rule applies "when parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract," which are really economic losses constituting "simply put, disappointed economic expectations." Indem. Ins. Co. of N. Am., 891 So. 2d at 536.  "Simply labeling a fraud in the performance claim as a fraud in the inducement claim [or a fraud claim as in the instant case] is not sufficient to avoid the economic loss rule." Taylor v. Maness, 941 So. 2d 559, 564 (Fla. 3d. DCA 2006).

In this case, the facts alleged to constitute fraud relate to *performance* of the Agreement, rather than *entry into it*, because Plaintiff alleges no independent damage from the alleged fraud. The damage allegedly arises because Stork claims that Lydian, Stork and other Defendants (without specifying which Defendants) did not perform the Contract and/or repudiated same. (Complaint. ¶16-18, 38 and 52 ).  This damage, however, constitutes a disappointed economic expectation.  Although the damage allegation is insufficiently vague, Plaintiff can never state an independent cause of action because the rule bars it in light of the claim's attempt to "seek a better bargain than [Plaintiff] made by turning a breach of contract into a tort for economic loss." Indem. Ins. Co. of N. Am., 891 So. 2d at 542.

Based upon the foregoing, the fraud alleged in Count-II is inseparable from the Contract. Plaintiffs have failed to state a cause of action upon which relief can be granted in Count II and the economic loss rule bars this cause of action.  See Cessna Aircraft Co. v. Avior Technologies,

Inc., 990 So. 2d 532, 537 (Fla. 3d DCA 2008) ("contracting parties must use traditional contract remedies to redress their purely economic losses"); Taylor v. Maness, 941 So. 2d 559, 564 (Fla. 3d DCA 2006) (economic loss rule barred fraud claim where alleged fraud related to performance of contract); D&M Jupiter, Inc. v. Friedopfer, 853 So. 2d 485, 487 (Fla. 4th DCA 2003) ("Where the fraud relates to the performance of the contract, the economic loss doctrine will limit the parties to their contractual remedies.")   Accordingly, this Court must dismiss Count-II of the Complaint.

Wherefore, Defendant, Lydian and Brown, hereby request that Count-II of the Complaint be dismissed, with prejudice, and for such other and further relief as this court deems just and proper.

**c. Motion To Dismiss Count - III Of The Complaint For Breach Of Fiduciary Duty**

**(i)   Count - III Should Be Dismissed Because There Are No Facts Alleged To Support A Breach Of Fiduciary Duty Claim**

The Plaintiff's claim for breach of fiduciary duty should be dismissed because the relationship between Defendants, Brown, Johnson, Purcell, and Stanton and the Plaintiff, which arises from the Contract attached to the Plaintiff's Complaint and/or the same conduct and/or occurrences related to the breach and performance of said Contract is not fiduciary in nature. Plaintiff has incorporated all 40 factual allegations in to Count-III further establishing that the alleged breach of fiduciary duty arises solely from the failure to perform the Contract.

Under Florida law, "[t]o establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel and protect the weaker party." Watkins v. NCNB Nat'l. Bank of Fl., 622 So. 2d 1063, 1065 (Fla. 3d. DCA 1993) (affirming dismissal of breach of fiduciary duty claim).  No such

18

allegations regarding an undertaking exist in the Complaint.  Moreover, "[i]n an arms-length transaction, there is no duty imposed on either party to act for the benefit of or protection of the other party, or to disclose facts that the other party could, by its own diligence, have discovered." Id.  The Plaintiff in this case entered into an arms-length transaction, and consequently, there can be no claim for breach of fiduciary duty.  In fact, the Contract Stork signed confirms the following at paragraph 5(c) – "[]The Purchase Price constitutes fair consideration and reasonable equivalent value for the Shares and was determined as a result of arms' length negotiations between Seller and Purchaser[]."  See Exhibit 1 to the Complaint; see, e.g., Mt. Sinai Med. Center of Greater Miami, Inc. v. Heidrick & Struggles, Inc., 188 Fed. Appx. 966, 969 (11th Cir. July 12, 2006) (unpublished) (per curiam)( A party seeking to establish the existence of a fiduciary relationship must allege "some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." "When the parties are dealing at arm's length, a fiduciary relationship does not exist because there is no duty imposed on either party to protect or benefit the other," quoting, Barnett Bank of W. Fla. v. Hooper, 498 So.2d 923, 927 (Fla.1986) and Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp., 850 So.2d 536, 541 (Fla. 5th DCA 2003).

The allegations in the Complaint allege no more than an arms-length transaction upon which Plaintiff seeks to impose additional duties, and as a result, the claim of breach of fiduciary duty fails.  Plaintiff alleges the fiduciary duty arose because of, what appears to be, a relationship between the Board of Directors of Lydian and a shareholder (i.e., Stork), but there is no such relationship because the Contract Plaintiff relies upon was entered into at arms-length.  Further, the Contract negates any superior knowledge, as it contains no such representations or

19

undertaking by Lydian or the remaining Defendants and specifically states that the Contract as written "[]embodies the entire agreement and understanding of the parties hereto with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements and understandings, oral or written, relating to said subject matter. . . ." (Complaint; Ex. 1. ¶8).

There are also no facts in the Complaint supporting a *breach* of any alleged fiduciary duty.  The vague, conclusory allegations of the Complaint state that ". . . defendants breached their fiduciary duty to Stork by causing Lydian to repurchase the stock of favored shareholders, including insiders, while failing and refusing to cause Lydian to repurchase Stork's shares of Lydian stock under the same terms and conditions without stating how this specifically breaches the parties' agreement or any legal duty imposed by their relationship.  (Complaint ¶56).  In an attempt at a catch-all, the Plaintiff's Complaint vaguely makes conclusory allegations and incorporates same (i.e., all 40 factual  allegations) while failing to plead ultimate facts in support of his legal conclusions.

### (ii) Count - III Should Also Be Dismissed Because The Economic Loss Rule Bars Plaintiff's Claim For Breach Of Fiduciary

Lastly, Plaintiff's claim for breach of fiduciary duty is barred by the economic loss rule for the same reasons and based upon the same law provided for in Section III (b)(ii) of this Motion, which is incorporated herein by reference as if same were fully set forth herein.  There is no relationship or duty between Defendants and Stork independent of the Contract, especially as to Brown who would have executed said Contract on behalf of Lydian.  Once again, Plaintiff incorporates all 40 of his factual allegations in the breach of fiduciary duty count evidencing the fact that the breach of fiduciary count is not separate and distinct from the performance (or lack thereof) of the Contract.  (See e.g., Complaint at ¶18, 37, 38, 54 and 56)  Plaintiff's claim for

breach of fiduciary duty fails because it seeks improperly to enhance a contractual relationship, whose duties and allocation of loss are recoverable through breach of contract damages. See, e.g., Mt. Sinai Med. Center of Greater Miami, Inc. v. Heidrick & Struggles, Inc., 188 Fed. Appx. at 969 (affirming summary judgment against plaintiff on breach of fiduciary duty because plaintiff "does not allege [defendant] undertook to perform any duties for [plaintiff] other than those involved in the search contract"). In the instant matter, Stork's claim for breach of fiduciary duty is based upon the same conduct that provides the basis for his breach of contract actions and is therefore barred by the economic loss rule and should be dismissed.  (See e.g., Complaint at ¶18, 37, 38, 54 and 56)  Lehman Bros. Holdings, Inc. v. Hirota, No., 2007 WL 1471690, **4-5 (M.D. Fla. May 21, 2007) (applying economic loss rule to breach of fiduciary duty claim and dismissing same).  Accordingly, Plaintiff's Complaint must be dismissed against Brown, Johnson, Purcell, and Stanton in light of the Contract.

Wherefore, Defendants, Brown, Johnson, Purcell, and Stanton, hereby request that Count-III of the Complaint be dismissed, with prejudice, and for such other and further relief as this court deems just and proper.

By:  s/ Michael J. Pike

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the following Service List in the manner specified by CM/ECF on this ___day of September, 2010:

Amy S. Rubin, Esquire                    Elliot Hallak, Esquire
Fox Rothschild, LLP                      Fox Rothschild, LLP

222 Lakeview Ave., Ste 700
West Palm Beach, FL  33401
arubin@foxrothschild.com

222 Lakeview Ave., Ste 700
West Palm Beach, FL  33401
ehallak@foxrothschild.com

Respectfully submitted,

**BURMAN, CRITTON, LUTTIER**
**& COLEMAN, LLP**
303 Banyan Blvd., Suite 400
West Palm Beach, FL 33401
(561) 842-2820 - Ph
(561) 844-6929 ó Fax

By:      s/ Michael J. Pike
         **Robert D. Critton, Jr.**
         Florida Bar No:  224162
         **Gregory W. Coleman**
         Florida Bar No: 846831
         **Michael J. Pike**
         Florida Bar No:  617296
         **Dean T. Xenick**
         Florida Bar No:  479550

*Counsel for Defendants, Lydian, Brown, Johnson,*
*Purcell & Stanton*
         rcrit@bclclaw.com
         gcoleman@bclclaw.com
          mpike@bclclaw.com
         dtx@bclclaw.com